UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MITCHELL BOISVERT, on behalf of himself
and all others so similarly situated,

  Plaintiff,

v.

CARNIVAL CORPORATION,

  Defendant.
_____/

CASE NO.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW, Mitchell Boisvert ("Plaintiff"), individually and on behalf of all others similar situated, by and through the undersigned counsel, and sues Defendant, Carnival Corporation ("Defendant" or "Carnival"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") on personal knowledge, investigation of his counsel, and on information and belief as follows:

## INTRODUCTION

1. The TCPA was enacted to prevent companies like Carnival from invading American citizen's privacy and to prevent abusive "robo-calls."

2. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

1

3. "Senator Hollings, the TCPA's sponsor, described these calls as 'the ***1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

## NATURE OF ACTION

4. Plaintiff brings this class action for damages and other equitable and legal remedies resulting from the unlawful conduct of Carnival in negligently, knowingly and/or willfully placing calls to the cellular telephones belonging to Plaintiff and putative Class Members for non-emergency purposes, using an automatic telephone-dialing system and/or pre-recorded messages without their prior express consent, in violation of the TCPA. Plaintiff and putative Class Members were not Carnival customers at the time the calls at issue were placed. Upon information and belief, these calls were intended for persons other than Plaintiff and putative Class Members.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over this matter because Plaintiff's claims arise from violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which is a law of the United States. This Court also has original jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000.00, as each putative Class Members is entitled to $500.00 per call negligently

placed in violation of the TCPA, or $1,500.00 per call knowingly and/or willfully placed in violation of the TCPA, exclusive of attorneys' fees, pre-judgment interest and costs.

6. The alleged violations described herein occurred in Sarasota County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

7. Plaintiff is a natural person, and citizen of the State of Florida, residing in Sarasota County, Florida.

8. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

9. Defendant, Carnival, is a corporation with its principal place of business located at 3655 N.W. 87th Ave., MLGL 815, Miami, FL 33178-2428 and which conducts business in the State of Florida through its registered agent, NRAI Services, Inc., located at 1200 South Pine Island Rd., Plantation, FL 33324.

10. Between approximately February 5th, 2020 and February 7th, 2020, Carnival called Plaintiff several times with prerecorded messages concerning a boarding pass check-in for an upcoming cruise.

11. Plaintiff has never gone on any cruise nor did he sign up for a cruise with Carnival.

12. Plaintiff did not provide his cellular telephone number to Defendant, nor did he ever provide express consent for Defendant to place calls to his cellular telephone.

13. Defendant's robocalls and prerecorded messages, as received by Plaintiff, did not provide him an opportunity to opt out of receiving the calls, similarly to other class members.

14. All of the calls Carnival made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that he knew it was an autodialer because he received prerecorded messages from Carnival.

15. Plaintiff believes the calls were made using equipment which has the capacity to store numbers to be called and to dial such numbers automatically.

16. Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (941) ***-8504, and was the called party and recipient of Defendant's calls.

17. On or about February 5th, 2020, Plaintiff received a pre-recorded message from Carnival providing information about an upcoming cruise. Plaintiff did not have an upcoming cruise. Plaintiff received the pre-recorded message to his cell phone's voicemail and listened to the pre-recorded message.

18.     On or about February 6th, 2020, Plaintiff again received another pre-recorded message from Carnival.  Plaintiff made the effort to communicate with a live agent from Carnival and asked them to stop calling his cellular telephone.

19.     On or about February 7th, 2020, Carnival again placed another prerecorded telephone call to Plaintiff's cellular telephone which stated:

> "All guests are required to complete their online check-in and select an arrival appointment so that you can print the boarding pass needed for terminal access. Please visit us at www.carnival.com/onlinecheckin no later than midnight before your sailing date. We look forward to welcoming you soon."

20.     Carnival has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiff's cellular telephone in this case.

21.     Carnival has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiff's cellular telephone in this case, with no way for the consumer, or Carnival, to remove the number. Plaintiff clearly informed Carnival they were calling the wrong number but the pre-recorded messages continued.

22.     Carnival's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Carnival they do not wish to be called.

23.     Carnival has had other federal lawsuits against them alleging similar violations as stated in this Complaint.

24. Carnival and other similar companies have had numerous complaints against it from consumers across the country asking to not be called, however Defendant continues to call these individuals.

25. Not one of Carnival's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

26. Carnival willfully and/or knowingly violated the TCPA with respect to Plaintiff. Plaintiff clearly informed Carnival to stop calling and that they were calling the wrong number. Carnival is aware that individuals book their cruises several months (even years) prior to sailing but does not scrub cell numbers to determine if the numbers have been reassigned.

27. As a result of each of the calls described above, Plaintiff and putative Class Members suffered an invasion of privacy, as well as particularized and concrete injuries. Plaintiff and putative Class Members also suffered out-of-pocket losses, including the monies paid to their wireless carriers for the receipt of such calls. Additionally, due to both the answered and unanswered calls placed by Defendant, Plaintiff and putative Class Members suffered the expenditure of their time, exhaustion of their cellular telephone batteries, unavailability of their cellular telephones while Defendant's calls were incoming and trespass upon their respective chattels. All of the above-mentioned injuries were caused by, and/or directly related to, Defendant's placement of calls to plaintiff and putative Class Members by using an ATDS to call their cellular telephone numbers. Plaintiff and putative Class Members were left long pre-recorded messages with cruise instructions they were never signed up for. Plaintiff and

putative Class Members had to go into their phones after receiving a notice of a voicemail, dial into their voicemail, retrieve the voice message, and hear the pre-recorded message from Defendant.

28. In response to Defendant's unlawful conduct, Plaintiff filed the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited cellular telephone calls, and an award of statutory damages and actual damages to putative Class Members under the TCPA, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

29. Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4) and as detailed in the individual counts below, Plaintiff brings this action on behalf of himself and all others similarly situated. Specifically, Plaintiff seeks to represent the following persons ("the Class" or "Class Members"):

> All persons within the United States who, between September 3, 2016 and the present, (1) received a non-emergency call to their cellular telephone numbers; (2) through the use of an automatic telephone dialing system or an artificial or pre-recorded voice; (3) from Defendant; and (4) who were not Carnival customers at the time of the calls.

Plaintiff hereby reserves the right to amend or modify the class definition after having had an opportunity to conduct discovery.

30. Excluded from the Class are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their Court staff, and Plaintiff's counsel.

## NUMEROSITY

31. At present, Plaintiff does not know the exact number of putative Class Members. However, given the volume of cellular telephone numbers reassigned on a daily basis[1], and the number of Carnival customers throughout the United States, Class Members likely number in the thousands, if not hundreds of thousands, and are geographically disbursed throughout the country.

32. The alleged size and geographic disbursement of the putative Class, and relatively modest value of each individual claim, makes joinder of all Class Members impracticable or impossible.

## PREDOMINANCE OF COMMON QUESTIONS OF LAW AND FACT

33. This action involves common questions or law and fact, which predominate over any questions affecting individual Class Members. The common legal and factual questions include at least the following:

   a) Whether Defendant uses an ATDS, or artificial or pre-recorded voice to place calls to cellular telephones;

   b) Whether between September 3, 2016 and the present, Defendant used an ATDS or artificial or pre-recorded voice to place calls to the cellular telephones of Plaintiff and putative Class Members;

   c) Whether between September 3, 2016 and the present, Defendant used an artificial voice or pre-recorded voice in connection with its

---

[1] According to the Federal Communications Commission, as many as 100,000 cellular telephone numbers are reassigned every day. *In Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015)

placement of autodialed calls to the cellular telephones of Plaintiff and putative Class Members;

d) Whether Defendant is subject to the TCPA;

e) Whether Defendant can show that it obtained prior express consent from Plaintiff and putative Class Members to place calls to their cellular telephones using an ATDS or artificial or pre-recorded voice;

f) Whether Defendant's conduct violates the TCPA;

g) Whether Defendant's conduct was negligent;

h) Whether Defendant's conduct was knowing and/or willful;

i) Whether Defendant is liable for damages, and the amount of such damages;

j) Whether Plaintiff and putative Class Members are entitled to declaratory relief;

k) Whether Defendant should be enjoined from engaging in conduct in violation of the TCPA in the future; and

l) Whether Plaintiff and Class Members are entitled to any other remedy.

## **TYPICALITY**

34. Plaintiff's claims are typical of the claims of the putative Class Members, as Plaintiff and Class Members have been injured by Defendant's uniform misconduct – the placement of calls to cellular telephones using an ATDS or artificial or pre-recorded voice for non-emergency purposes and without prior express consent.

35. Plaintiff shares the aforementioned facts and legal claims and/or questions with putative Class Members. Further a sufficient relationship exists between Defendant's conduct and the damages sustained by Plaintiff and putative Class Members.

## ADEQUACY

36. Plaintiff will fairly and adequately protect the interests of putative Class Members and is committed to the vigorous prosecution of this action. Plaintiff has retained counsel experienced in complex consumer class action litigation and matters specifically involving TCPA violations. Plaintiff intends to prosecute this action vigorously, and has no interest adverse or antagonistic to those of the Class.

## SUPERIORITY

37. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all Class Members' claims is impracticable or impossible for at least the following reasons:

   a. The Class claims predominate over any questions or law or fact (if any) affecting only individual Class Members;

   b. Absent a Class, the Class Members will continue to suffer damages and Defendant's violations of the TCPA will continue without remedy;

   c. Given the size of individual Class Members' claims, few (if any) putative Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed and continues to commit against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.  Individual litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts, while also increasing the delay and expense to all parties and the courts. Comparatively, the class action device provides economies of scale and allows Class Members' claims to be comprehensively administered and uniformly adjudicated in a single proceeding.

e.  When Defendant's liability has been adjudicated, claims of all Class Members can be administered efficiently and determined uniformly by the Court;

f.  No difficulty impedes the action's management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the damages caused to them by Defendant's uniform misconduct;

g.  The litigation and trial of Plaintiff's claims are manageable;

h.  Defendant has acted and/or refused to act on grounds generally applicable to Plaintiff and the Class by placing calls to their cellular telephone numbers, using an ATDS or artificial or pre-recorded voice, for non-emergency purposes and without their prior express consent, rendering just and appropriate final injunctive relief for the Class; and

i.  Because Plaintiff seeks injunctive relief and corresponding declaratory and equitable relief for the entire Class, the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying

adjudications with respect to individual Class Members, and establishing incompatible standards of conduct for Defendant. Additionally, bringing individual claims would burden the courts and result in an inefficient method of resolving this action. As a practical matter, adjudications with respect to individual Class Members would be dispositive of the interests of other Class Members who are not parties to the adjudication and may impair or impede their ability to protect their respective interests. Consequently, class treatment is a superior method for adjudication of the issues in this case.

38. The Class is also ascertainable as Members can be easily identified through Defendant's records or those of its vendors who placed the calls at issue on behalf of Defendant.

## COUNT I

**Negligent Violation of the Telephone Consumer Protection Act**
**47 U.S.C. § 227,** *et seq.*

39. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-one (41) as if fully set forth herein.

40. Without prior express consent, Defendant placed calls for non-emergency purposes to the cellular telephones of Plaintiff and Class Memebrs using an ATDS or artificial or pre-recorded voice with the capacity to store or produce telephone numbers to be called.

41. The foregoing acts constitute numerous and multiple negligent violations of the TCPA, including, but not limited to, each of the above-cited provisions of 47 U.S.C. § 227, *et seq.*

42. Under 47 U.S.C. § 227(b)(3)(B), and as a result of the alleged negligent violations of the TCPA, Plaintiff and Class Members are entitled to an award of $500.00 in statutory damages for each and every non-emergency call placed in violation of the TCPA.

43. Plaintiff and Class Members are also entitled to and seek injunctive relief prohibiting future violations of the TCPA.

44. Plaintiff and Class Members are also entitled to an award of costs and expenses.

## COUNT II

**Knowing and/or Willful Violation of the Telephone Consumer Protection Act
47 U.S.C. § 227, *et seq.***

45. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-one (41) as if fully set forth herein.

46. Without prior express consent, Defendant placed calls for non-emergency purposes to the cellular telephones of Plaintiff and Class Members using an ATDS or artificial or pre-recorded voice with the capacity to store or produce telephone numbers to be called.

47. The foregoing acts constitute numerous and multiple knowing and/or willful violations of the TCPA, including, but not limited to, each fo the above cited provisions of 47 U.S.C. § 227, *et seq.*

48. Pursuant to 47 U.S.C. § 227(b)(3)(B), and as a result of the alleged knowing and/or willful violations of the TCPA, Plaintiff and Class Members are entitled to an award of $1,500.00 in statutory damages for each and every non-emergency call placed in violation of the statute.

49. Plaintiff and Class Members are also entiteld to and seek injunctive relief prohibiting future violations of the TCPA.

50. Plaintiff and Class Members are also entitled to an award of costs and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all putative Class Members the following relief against Defendant:

A. $500.00 in statutory damages for each and every call negligently placed by Defendant in violation of 47 U.S.C. § 227(b)(1) of the TCPA;

B. $1,500.00 in statutory damages for each and every willfully and/or knowingly call placed by Defendant in violation of 47 U.S.C. § 227(b)(1) of the TCPAL

C. An ward of actual damages resulting from Defendant's violations of the TCPA;

D. Injunctive relief seeking the implementation of measures by Defendant to stop future violations of the TCPA;

E. An award of costs and expenses to Plaintiff's counsel;

F.    An order certifying this matter a s a class action pursuant to Federal Rule of Civil Procedure 23, certifying the Class defined herein, appointing as Class Representative, and appointing Plaintiff's cousnel as Class Counsel; and

G.    Any additional relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

Respectfully Submitted,

*/s/ Octavio Gomez*
Octavio "Tav" Gomez, Esquire
Morgan & Morgan Tampa, P.A.
One Tampa City Center
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
TGomez@ForThePeople.com
Florida Bar #: 0338620
Attorney for Plaintiff